# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| UPMC BRADDOCK, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>HILDA L. SOLIS, Secretary, United States<br>Department of Labor, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civ. A. No. 1:09-1210-PLF<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: September 23, 2010

Respectfully submitted,


Katherine E. Bissell
Associate Solicitor of Labor

TONY WEST
Assistant Attorney General

Beverly Dankowitz
Counsel for Litigation

RONALD C. MACHEN JR.
United States Attorney

Theresa Schneider Fromm
Senior Trial Attorney
United States Department of Labor
Office of the Solicitor
200 Constitution Ave., N.W.
Room N-2474
Washington, DC 20210

JOSEPH W. LOBUE
Assistant Branch Director
Federal Programs Branch

LILY S. FAREL
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Tel: (202) 353-7633
Fax: (202) 616-8460
lily.farel@usdoj.gov

*Of Counsel for Defendants*

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.     Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.     Administrative Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     D.     The Present Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     I       The Regulatory Definition of "Subcontract" Is Fully Consistent With
           Section 503, VEVRAA, and Executive Order 11246 . . . . . . . . . . . . . . . . . . . . . 15

     II.    The Regulations Have The Force And Effect Of Law And Are Binding
           Upon Plaintiffs Regardless Of Whether They Have Affirmatively
           Agreed To Comply With Them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

           A.     The Equal Opportunity Clauses Are Incorporated By Operation
                  of Law into Every Non-Exempt Government Contract . . . . . . . . . . . . . . 19

           B.     Neither Congress Nor The President Has Delegated Authority To
                  Contracting Agencies To Exempt Plaintiffs' Contracts From the
                  Non-Discrimination Requirements of Federal Law . . . . . . . . . . . . . . . . 24

     III.   The Administrative Review Board's Determination That Plaintiffs
           Are "Subcontractors" Is Rational and Fully Supported by the Record . . . . . . . 25

           A.     The Medical Services Provided By Plaintiffs
                  Are "Non-Personal Services" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

           B.     The Medical Services Provided By Plaintiffs Were "Necessary to
                  the Performance" of the Health Plan's Contract with OPM . . . . . . . . . . 29

           C.     OFCCP's 2003 Policy Directive Does Not Excuse the
                  Plaintiffs From Their Obligation To Comply with the
                  Equal Opportunity Clauses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## TABLE OF AUTHORITIES

**CASES**                                                                **Page**

*American Airlines, Inc. v. Austin*, 75 F.3d 1535 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 24

*Air Transport Ass'n of America v. FAA*,
    291 F.3d 49 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Barnhart v. Walton*,
    535 U.S. 212 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Burnside-Ott Aviation Training Grr. v. Dalton*,
    107 F.3d 854 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chevron, USA v. Natural Resources Defense Council*,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Chrysler Corporation v. Brown*,
    441 U.S. 281 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 23

*Contractors Ass'n of Eastern Pennsylvania v. Secretary of Labor*,
    442 F.2d 159 (3d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*G.L. Christian and Assoc. v. United States*,
    312 F.2d 418 (Ct. Cl.), *cert. denied* 375 U.S. 954 (1963) . . . . . . . . . . . . . . . . . . . . . 20, 21

*Household Credit Serv. v. Pfennig*,
    541 U.S. 232 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Javins v. First National Realty Corp.*,
    428 F.2d 1071 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*K Mart Corp. v. Cartier*,
    486 U.S. 281 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*M. Steinthal & Co. v. Seamans*,
    455 F.2d 1289 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23

*National Ass'n of Mfrs. v. United States Dept. of the Interior*,
    134 F.3d 1095, 1106 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Northeast Construction Company v. Romney*,
    485 F.2d 752 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*OFCCP v. Bridgeport Hospital*,
    ARB No. 00-034 (January 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 26, 33

**CASES (Cont.)**                                                                               **Page**

*Ohio v. United States. Dept. of the Interior*,
    880 F.2d 432 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Qwest Communications Int'l Inc. v. F.C.C.*,
    229 F.3d 1172 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rush Prudential v. Moran*,
    536 U.S. 355 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 30, 32

*S.J. Amoroso Const. Co. v. United States*,
    12 F.3d 1072 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20, 25

*Thomas Jefferson Univ. v. Shalala*,
    512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Mississippi Power & Light Co.*,
    638 F.2d 899 (5th Cir. 1981), *cert denied* 454 U.S. 892 (1981) . . . . . . . . . . . . . . . . 19, 21

*United States v. New Orleans Public Service, Inc.*,
    553 F.2d 459 (5th Cir. 1977), *vacated on other grounds* 436 U.S. 942 (1978) . . . . . . . . 21

*Volvo GM Heavy Truck Corp. v. United States Dept. of Labor*,
    118 F.3d 205 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATUTES**                                                                                    **Page**

Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 793 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

38 U.S.C. § 4212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**EXECUTIVE ORDERS**                                                                            **Page**

E.O. 11246, 30 Fed. Reg. 12319 (Sept. 24, 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

E.O. 11375, 32 Fed. Reg. 14303 (Oct. 13, 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 19

E.O. 11758, 39 Fed. Reg. 2075 (Jan. 15, 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15, 22

E.O. 12086, 43 Fed. Reg. 46501 (Oct. 5, 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

E.O. 13279, 67 Fed. Reg. 77141 (Dec. 12, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**REGULATIONS**                                                                 **Page**

41 C.F.R. Chap. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

41 C.F.R. § 60-1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 17, 26, 29, 32

41 C.F.R. § 60-1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21

41 C.F.R. § 60-1.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

41 C.F.R. § 60-1.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

41 C.F.R. § 60-1.26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

41 C.F.R. § 60-1.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

41 C.F.R. § 60-1.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

41 C.F.R. § 250.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

41 C.F.R. § 250.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21

41 C.F.R. § 250.60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

41 C.F.R. § 741.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

41 C.F.R. § 741.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21

41 C.F.R. § 741.44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

41 C.F.R. § 741.60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

48 C.F.R. § 37.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 27

48 C.F.R. § 37.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## PRELIMINARY STATEMENT

Plaintiffs are three hospitals affiliated with the University of Pittsburgh Medical Center ("UPMC") that have entered into agreements with the UPMC's Health Maintenance Organization or HMO (hereinafter the "UPMC Health Plan") to provide medical services and supplies to, among others, federal employees who participate in the Federal Employees Health Benefits Program ("FEHBP") pursuant to a contract between the UPMC Health Plan and the U.S. Office of Personnel Management ("OPM").  Because the Plaintiffs are independent contractors that provide medical services that are necessary to the performance of the UPMC Health Plan's contract with the OPM, the Department of Labor ("DOL") determined that the Plaintiffs are subcontractors, and are therefore required to comply with the equal opportunity requirements of Section 503 of the Rehabilitation Act of 1973 ("Section 503"),[1] the Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA"),[2] Executive Order 11246 ("Executive Order"),[3] and the DOL's implementing regulations.  Specifically, the Plaintiffs are required to take affirmative action to employ individuals with disabilities and specified classes of U.S. military veterans, and may not discriminate in the terms and conditions of employment on the basis of race, color, religion, sex or national origin.

Although the Plaintiffs concede that they provide medical services, they nonetheless maintain that they are not subcontractors, and assert that the agency's regulatory definition of the term "subcontract" conflicts with both the underlying statutes and the Executive Order.  In

---

[1]  29 U.S.C. § 793.

[2]  38 U.S.C. § 4212.

[3]  Executive Order 11246, 30 Fed. Reg. 12319 (Sept. 24, 1965) was amended by Executive Order 11375, 32 Fed. Reg. 14303 (Oct. 13, 1967), Executive Order 12086, 43 Fed. Reg. 46501 (Oct. 5, 1978), and Executive Order 13279, 67 Fed. Reg. 77141 (Dec. 12, 2002).  All references herein to "Executive Order 11246" or "Executive Order" include such amendments.

addition, the Plaintiffs allege that they have not provided any service to a federal agency and have not agreed to abide by the equal opportunity requirements of either the statutes or the Executive Order, and therefore need not comply with the nondiscrimination requirements applicable to federal contractors.  As we explain below, however, each of these claims is groundless.

First, the statutes, the Executive Order, and DOL's implementing regulations uniformly apply not only to federal contracts but also to subcontracts.  Neither the statutes nor the Executive Order is limited in scope to contractors who directly provide goods or services to federal agencies.  Moreover, there is no basis for Plaintiffs' allegation that the regulatory definition of subcontract conflicts with either the underlying statutes or the Executive Order.  Neither the statutes nor the Executive Order define the term subcontract.  Instead, Congress and the President explicitly delegated to the Secretary of Labor the authority to promulgate implementing regulations, including those governing subcontracts.  The Secretary's regulations, in turn, define the term "subcontract" as an agreement or arrangement between a contractor and any person (other than an employment relationship) for the purchase, sale or use of personal property or nonpersonal services necessary to the performance of a contract with the Government, or under which any portion of the Government contract is performed, undertaken or assumed.  Because the statutory term "subcontract" is ambiguous and the regulatory definition of that term is reasonable and consistent with the purposes of both the underlying statutes and the Executive Order, the agency's construction is entitled to substantial deference and must be given controlling weight here.

Second, the regulations promulgated under Section 503, VEVRAA, and the Executive Order have the full force and effect of law and are binding on Plaintiffs whether or not they have

agreed or otherwise consented to comply with them.  The statutes and the Executive Order each

mandate that every covered contract with the Government *and every subcontract* incorporate

equal opportunity requirements.  Those requirements are therefore incorporated into covered

contracts by operation of law regardless of whether the mandatory clauses are actually inserted

into the contracts.  Because the clauses are mandatory, and the authority to grant an exemption is

conferred exclusively on the Secretary of Labor, the clauses are not subject to modification or

waiver by one or more of the parties to the contract.  Neither the UPMC Health Plan nor any

federal contracting agency is empowered to override federal law by simply failing to incorporate

the governing provisions into its contracts with the Plaintiffs.  To the contrary, the only way that

a contractor or subcontractor can avoid compliance with these anti-discrimination provisions is if

the Secretary of Labor, to whom the power to waive compliance has been delegated, grants that

party an exemption.  As no such waiver has been granted here, the Plaintiffs are obliged to

comply with the requirements of Section 503, VEVRAA, and the Executive Order, and to permit

administrative inspections of their records to ensure that they do so.

Finally, DOL's determination that Plaintiffs are parties to a subcontract within the

meaning of the implementing regulations is rational and fully supported by the Administrative

Record.  As set out above, the regulation defines "subcontract" to include an agreement for the

purchase or sale of personal property or "nonpersonal services" that are "necessary to the

performance" of a Government contract or under which any portion of a Government

contractor's obligations under a contract are "performed, undertaken, or assumed."  Consistent

with the definition of the term "nonpersonal services" in the Federal Acquisition Regulations,

the Secretary has interpreted "nonpersonal services" as services provided by personnel of a

contractor who are not subject to the supervision and control usually prevailing in relationships

-3-

between the Government and its employees.  Because the agency's construction of its own

regulation is neither plainly erroneous nor inconsistent with the text of the regulation, it must be

accorded controlling weight.  There is no dispute that the Plaintiffs' employees are not and were

not subject to the supervision or control of either the Government or the UPMC Health Plan.

Moreover, there is ample evidence in the record to support the Secretary's determination that the

Plaintiffs furnished medical services that were necessary to the performance of UPMC Health

Plan's contract with the OPM.  Similarly, the Plaintiffs "performed" services that the Health

Plan was obliged to perform under its contract with OPM; therefore, the Plaintiffs' agreements

with the UPMC Health Plan fell well within the regulatory definition of subcontract.

     For all of these reasons, this Court should grant Defendants' motion for summary

judgment and uphold the Secretary's determination that the Plaintiffs are required to comply

with the nondiscrimination requirements of federal law.

## BACKGROUND

### A.    Statutory and Regulatory Background

     Each of the statutes at issue in this case, as well as Executive Order 11246, expressly

mandates that every covered contract must include a provision embodying the equal opportunity

requirements imposed by federal law.  Section 503(a) of the Rehabilitation Act of 1973 provides

that any Government contract in excess of $10,000 for the procurement of personal property or

nonpersonal services "*shall contain* a provision requiring that the party contracting with the

United States shall take affirmative action to employ and advance in employment qualified

individuals with disabilities."  29 U.S.C. § 793(a) (emphasis added).  The same provision

expressly applies to "any subcontract in excess of $10,000 entered into by a prime contractor in

carrying out any contract for the procurement of personal property or nonpersonal services

(including construction) for the United States.  *Id.*  That statute specifically authorizes the President to implement the provisions of section 503 by promulgating regulations, *id.*, and confers authority on the President to waive the requirements of section 503 with respect to a particular contract "when the President determines that the national interest so requires and states in writing the reasons for such determination." *Id.*, § 793(c)(1).  The President subsequently delegated all of the authority conferred upon the President by section 503 to the Secretary of Labor.  E.O. 11758, 39 Fed. Reg. 2075 (Jan. 15, 1974).  In addition, the statute grants the Secretary authority to "waive the requirements of the affirmative action clause required by regulations promulgated under subsection (a)" in certain circumstances if the Secretary finds that such a waiver "will not interfere with or impede the effectuation of this chapter." *Id.*, § 793(c)(2).

Similarly, section 402(a)(1) of VEVRAA provides that any Government contract in excess of $100,000 for the procurement of personal property or nonpersonal services "*shall contain* a provision requiring that the party contracting with the United States take affirmative action to employ and advance in employment qualified covered veterans." 38 U.S.C. § 4212(a)(1) (emphasis added).  This provision likewise "applies to any subcontract in the amount of $100,000 or more entered into by a prime contractor in carrying out any such contract." *Id.* The statute expressly authorizes the Secretary of Labor to promulgate regulations which, among other things, are to "requir[e] affirmative action to employ such qualified veterans under such contracts and subcontracts" and "promote the implementation of such requirement." *Id.*, § 4212(a)(2).  In addition, the Secretary is expressly authorized to investigate complaints of noncompliance and to "take appropriate action in accordance with the terms of the contract and applicable laws and regulations," *Id.*, § 4212(b), and to promulgate regulations requiring

-5-

periodic reports from contractors to ensure compliance. *Id.*, § 4212(d).

Section 202 of Executive Order 11246, as amended by Executive Order 11375,[4] likewise requires that "all Government contracting agencies *shall include* in every Government contract" provisions which, among other things, require that "[t]he contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin" and "will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin."  That same section requires each contractor to include these provisions "in every subcontract or purchase order unless exempted by the rules, regulations or orders of the Secretary of Labor issued pursuant to Section 204 of [the Order] so that such provisions will be binding upon each subcontractor or vendor."  Section 204, in turn, provides that "[t]he Secretary of Labor may, when he deems that special circumstances in the national interest so require, exempt a contracting agency from the requirement of including any or all of the provisions of Section 202 of this Order in any specific contract, subcontract, or purchase order.  The Secretary is also authorized "by rule or regulation, [to] exempt certain classes of contracts, subcontracts or purchase orders" in certain circumstances.  Section 201 of the Executive Order provides that "[t]he Secretary of Labor shall be responsible for the administration of [these provisions] and shall adopt such rules and regulations and issue such orders as he deems necessary and appropriate to achieve the purposes thereof."

The Department of Labor, through its Office of Federal Contract Compliance Programs

---

[4]  32 Fed. Reg. 14303 (Oct. 13, 1967).

("OFCCP"), administers each of these provisions.[5]   The Secretary's implementing regulations

provide that "[e]ach contracting agency and each contractor *shall include* the following equal

opportunity clause in each of its covered Government contracts or subcontracts (and

modifications, renewals, or extensions thereof if not included in the original contract) . . . ."  41

C.F.R. § 60-741.5(a) (implementing Section 503); 41 C.F.R. § 60-250.5(a) (implementing

VEVRAA); 41 C.F.R. § 60-1.4(a) (implementing E.O. 11246).  Each of these regulations

likewise makes clear that, by operation of the underlying statutes and Executive Order, "the

equal opportunity clause shall be considered to be a part of every [covered] contract and

subcontract . . . whether or not it is physically incorporated in such contract and whether or not

there is a written contract between the agency and the contractor."  41 C.F.R. §§ 60-741.5(e), 60-

250.5(e), and 60-1.4(e).

>    The implementing regulations define the term "subcontract" as follows:
>
>    *Subcontract* means any agreement or arrangement between a contractor and any person
>    (in which the parties do not stand in the relationship of the employer and an employee):
>
>    (1) For the purchase, sale or use of personal property or nonpersonal services which, in
>    whole or in part, is necessary to the performance of any one or more contracts; or
>
>    (2) Under which any portion of the contractor's obligation under any one or more
>    contracts is performed, undertaken or assumed.

41 C.F.R. §§ 60-741.2, 60-250.2(1), and 60-1.3.

    The regulations also include various provisions designed to ensure compliance including

reporting requirements, 41 C.F.R. §§ 60-1.7, 60-741.44(h), compliance evaluations, 41 C.F.R §

60-1.20, 60-741.60(a)(1), and 60-250.60(a)(1), and on-site compliance reviews.  41 C.F.R. § 60-

1.43, 60-741.60(a)(1)(ii), and 60-250.60(a)(1)(ii).  The "access to records" regulation, 41 C.F.R

---

[5]  The regulations for each of these laws are set forth at 41 C.F.R. Ch. 60.

§ 60-1.43, requires that the contractor agree to:

> permit access during normal business hours to its places of business for the purpose of conducting on-site compliance evaluations and complaint investigations and inspecting and copying such books and accounts and records, including computerized records, and other material as may be relevant to the matter under investigation and pertinent to compliance with the act or this part [of the regulations].

When the OFCCP has reasonable cause to believe that a contractor or a subcontractor has violated the Executive Order or its regulations, it may issue a Notice to Show Cause, within 30 days, why monitoring, enforcement proceedings or other appropriate action to ensure compliance should not be instituted. 41 C.F.R § 60-1.28. After reasonable efforts at conciliation, 41 C.F.R § 60-1.26(b)(1), the OFCCP may institute administrative enforcement proceedings by filing a complaint with the Department's Office of Administrative Law Judges ("ALJ"). 41 C.F.R § 60-1.26(a). The ALJ holds a hearing on the record and then issues a recommended decision and order, after which the case goes to the Department's Administrative Review Board ("ARB") for a final agency decision.

**B.**    **Statement of Facts**

Effective January 1, 2000, UPMC Health Plan entered into a contract with the U.S. Office of Personnel Management in which the Health Plan agreed to operate an HMO which would provide, among other things, medical services and supplies to federal employees who enroll in UPMC Health Plan's program of health benefits. *See* Administrative Record ("AR") 769-848, 921-982, 983-1069 (2000, 2002, 2004 FEHB Standard Contract for Community-Rated Health Maintenance Organization Carriers).[6]

---

[6] "Each contract shall be for a uniform term of at least 1 year, but may be made automatically renewable from term to term in the absence of notice of termination by either party." 5 U.S.C. § 8902(a).

To meet its contractual obligations as an HMO, UPMC contracted with individual hospitals, such as Plaintiffs, to provide medical services and supplies to federal government employees who participate in UPMC Health Plan.  AR 33-36 (Stipulated Facts, ¶¶ 9, 11, 13, 15), *see also* AR 866-898 (UPMC Health Plan, Appendix A, Section 5, "BENEFITS").  UPMC Health Plan has paid each of the Plaintiffs well in excess of $50,000 each year for these services and supplies since July 2002.  AR 33-36 (Stipulated Facts,  ¶¶ 10, 12, 14, 16).

Plaintiff UPMC Braddock has had an agreement with UPMC Health Plan to provide medical services for its members since 1995.  AR 135 (Letter of Understanding); AR 136-145 (Participating Hospital Agreement); AR 146 (Provider Agreement); AR 149-159 (Tri-State Health System Network Master Agreement); AR 162-171 (Participating Provider Agreement). These agreements were subsequently amended in 2001.  *See* AR 250-251 (February 21, 2001 Letter); AR 252 (Notice of Amendment); AR 253-255 (Notice of Amendment).

Plaintiff UPMC Southside has also had an agreement with UPMC Health Plan to provide medical services for its members since 1995.  AR 303 (Letter of Understanding); AR 304-311 (Participating Hospital Agreement); AR 312-314 (Provider Agreement Addendum); AR 315-316 (Letter of Intent);  AR 326-339 (Tri-State Health System Network Master Agreement).  The agreement between UPMC Southside and UPMC Health Plan was amended in 2001.  *See* AR 432-433 (February 21, 2001 Letter); AR 434 (Notice of Amendment); AR 435-437 (Notice of Amendment).

Finally, Plaintiff UPMC McKeesport has had an agreement with UPMC Health Plan to provide medical services for its members since 1995.  AR 585-598 (Participating Hospital Agreement); AR 599 (Provider Agreement); AR 601-619 (Tri-State Health System Network Master Agreement).  The agreement between UPMC McKeesport and UPMC Health Plan was

amended in 2001.  *See* AR 707-708 (February 21, 2001 Letter); AR 709 (Notice of

Amendment); AR 710-712 (Notice of Amendment).

The agreements between Plaintiffs and UPMC Health Plan set forth the rates of and

formulas for payment to be used by UPMC Health Plan to make payments to the Plaintiffs for

medical products and services provided to individuals covered by UPMC Health Plan.  AR 256-

300, 438-489, 713-768 (Reimbursement Rate Schedules).  None of the agreements between

UPMC Health Plan and the individual Plaintiffs, as contained in the Administrative Record,

includes a specific, written provision obligating the Plaintiffs to comply with Section 503,

VEVRAA, or the Executive Order.  *See* AR 135-768 (agreements between Plaintiffs and

UPMC), AR 36 (Stipulated Facts ¶ 20).

In 2004, OFCCP sent each of the Plaintiffs a letter stating that the hospital had been

selected for a compliance review under Section 503, VEVRAA, and the Executive Order.   AR

1070-1090 (Scheduling Letter Regarding OFCCP Compliance Review).  OFCCP requested that

each Plaintiff submit information demonstrating compliance with the two anti-discrimination

statutes and the Executive Order.  *Id.*  None of the Plaintiffs submitted this required information

to OFCCP.  AR 1138 (ALJ Recommended Decision and Order ¶ 25).  On September 26, 2006,

OFCCP sent each of the Plaintiffs a letter stating that, due to the lack of response to their request

for information, OFCCP would begin the on-site phase of compliance evaluation of the

Plaintiffs.  AR 1092 (Letter Regarding On-Site Audits).  In response, on October 11, 2006,

Plaintiffs' counsel sent a letter to OFCCP in which he asserted that the Plaintiffs are not

subcontractors and OFCCP has no authority to audit the Plaintiffs.  AR 1095 (Letter from

UPMC).

-10-

C.     **Administrative Proceedings**

On November 3, 2006, OFCCP filed administrative complaints against Plaintiffs to enforce the requirements imposed by Section 503, VEVRAA, the Executive Order, and the Secretary's implementing regulations. AR 1223 (ARB Final Decision and Order at 3).  The complaints were based on Plaintiffs' refusal to provide requested information to OFCCP as well as their refusal to allow an on-site review to take place.  *Id.*

On January 16, 2008, the ALJ assigned to hear the matter granted OFCCP's motion for summary judgment, finding that the Plaintiffs' agreements with the UPMC Health Plan are subcontracts, as defined by the regulations, and the Plaintiffs are therefore subject to the requirements of Section 503, VEVRAA, and the Executive Order.  AR 1149 (ALJ Recommended Decision and Order).  Plaintiffs filed exceptions to the ALJ's Recommended Decision and Order with the Department's ARB, arguing that neither the statutes nor the Executive Order are enforceable against the Plaintiffs because they had not entered into a contract with the Government, and had not agreed to abide by federal equal opportunity requirements.  AR 1153-55 (Defendants' Exceptions to Recommended Decision).

On May 29, 2009, the ARB issued a Final Decision and Order upholding the decision issued by the ALJ and confirming that the Plaintiffs' agreements are subcontracts covered by the provisions of Section 503, VEVRAA, and Executive Order 11246.  AR 1222 (ARB Final Decision and Order).  The ARB explained that all government contractors "must include the equal opportunity clauses in their subcontracts," and UPMC's contract with OPM explicitly required that UPMC include the clauses in every non-exempt contract. AR 1225 (ARB Final Decision and Order at 5).  However, the UPMC Health Plan failed to comply with this requirement and did not include the equal opportunity clauses in its agreements with the

-11-

Plaintiffs.   AR 1225 (ARB Final Decision and Order at 5).

Notwithstanding the Health Plan's failure to incorporate the clauses in its contracts with the Plaintiffs, the ARB concluded that the equal opportunity clauses required by these provisions are "'mandatory contract clause[s] that express[] a significant or deeply ingrained strand of public procurement policy'",  AR 1225 (ARB Final Decision and Order at 5) (quoting *S.J. Amoroso Const. Co., Inc. v. United States*, 12 F.3d 1072, 1075 (Fed. Cir. 1993)), and are therefore "incorporated by operation of each law into the [Plaintiffs'] contracts with UPMC." AR 1225 (ARB Final Decision and Order at 5).  The ARB rejected the Plaintiffs' contention that the "incorporation doctrine" applies only to prime contractors who voluntarily enter into a contract with the Government, reasoning that the regulations "unambiguously state that 'the equal opportunity clause shall be considered to be a part of every contract *and subcontract* required by the order and the regulations to include such a clause whether or not it is physically incorporated in such contract."   AR 1226 (ARB Final Decision and Order at 6)(emphasis in original).

The ARB also rejected the Plaintiffs' contention that they need not comply with either the statutes or the Executive Order because OPM's contract with the UPMC Health Plan defined the term "subcontractor" to exclude "providers of medical services and supplies."  The ARB agreed with the ALJ's conclusion that "the parties cannot, by contract, invalidate the equal opportunity provisions of the three laws" and reading the OPM contract to do so "would ignore the three laws' mandate to include the equal opportunity provisions in any Federal contract or subcontract."   AR 1227 (ARB Final Decision and Order at 7).

The ARB also rejected the Plaintiffs' contention that medical services are, by their nature, "personal services" and therefore fall outside the scope of the regulatory definition of

"subcontract."   AR 1229-30 (ARB Final Decision and Order at 9-10).   The ARB noted that the

three laws and their implementing regulations do not define the term "nonpersonal services;"

however, the Federal Acquisition Regulations define a "nonpersonal services" contract as one

"'under which the personnel rendering the services are not subject, either by the contract's terms

or by the manner of its administration, to the supervision and control usually prevailing in

relationships between the Government and its employees.'"   AR 1229 (ARB Final Decision and

Order at 9) (quoting 48 C.F.R. § 37.101).   The ARB concluded that the record supports the

ALJ's conclusion that the Plaintiffs "provided 'nonpersonal services' because they were neither

in an employer-employee relationship with the UPMC nor under the supervision and control that

an employer would exercise over its employees," and that their contracts therefore met the

regulatory definition of "subcontract" at 41 C.F.R. § 60-1.3.

Finally, the ARB rejected the Plaintiffs' contention that its construction of the term

"subcontract" as encompassing the Plaintiffs' provision of medical services in this case is

inconsistent with its prior decision in *OFCCP v. Bridgeport Hospital*, ARB No. 00-034

(Administrative Review Board Jan. 31, 2003).   AR 1230-1231 (ARB Final Decision and Order,

at 10-12).   The Board explained that *Bridgeport* involved a fee-for-services health benefits

insurance policy under which Blue Cross had contracted with OPM "to provide health insurance

– not medical care – to federal government employees."   AR 1230 (ARB Final Decision and

Order at 10).   In contrast, the ARB concluded that "UPMC is more than an insurer."   AR 1231

(ARB Final Decision and Order at 11).   Rather, UPMC Health Plan is an HMO that contracts

with individual physicians, medical groups and hospitals to provide medical services and

supplies to federal employees and its "[p]rovision of medical services and supplies was a critical

component of the UPMC's contract" with OPM.   AR 1231 (ARB Final Decision and Order at

-13-

11).  Consequently, "[t]he contract depended on medical providers like the [Plaintiffs] to offer medical services and supplies necessary for UPMC to meet its obligations under its contract with OPM."  AR 1231 (ARB Final Decision and Order at 11).  Citing the Supreme Court's decision in *Rush Prudential v. Moran*, 536 U.S. 355, 370 (2002), the ARB noted that the Court had "characterized an HMO as a health care delivery system defined by the providing of medical benefits and the assumption of financial risk in providing those benefits," and concluded that "there is ample evidence that the [Plaintiffs] were operating primarily as health care delivery providers and not strictly as insurance providers."  AR 1231-32 (ARB Final Decision and Order at 11-12).  Because the Plaintiffs provided services that were necessary to the performance of UPMC Health Plan's contract with OPM, the ARB concluded that the Plaintiffs' agreements with UPMC Health Plan are subcontracts subject to the equal opportunity provisions in Section 503, VEVRAA, and the Executive Order.  AR 1232 (ARB Final Decision and Order, at 12).

> **D.    The Present Action**

Plaintiffs seek review of the ARB's decision under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*  They allege that the ARB erroneously ruled that the Plaintiffs are subcontractors contractually obligated to comply with the requirements of section 503 of the Rehabilitation Act, VEVRAA, and Executive Order 11246.  Compl. ¶ 65 (Count I).  In addition, Plaintiffs allege that the regulations relied upon by the ARB are inconsistent with Executive Order 11246, exceed the grant of legislative authority delegated to the agency, and are inconsistent with the "fundamental notion" that a party becomes bound by the requirements of Section 503, VEVRAA, the Executive Order by "electing to do business with the federal government and/or by agreeing to be bound by such obligations."  Compl.¶¶ 70-72 (Count II).

## ARGUMENT

I.   **The Regulatory Definition of "Subcontract" is Fully Consistent
     With Section 503, VEVRAA and Executive Order 11246**

One of Plaintiffs' principal claims in this action is that the Secretary's implementing

regulations – specifically those defining the term "subcontract" – exceed the scope of the

agency's authority under the governing statutes and are inconsistent with Executive Order

11246.  Compl. ¶¶ 69-71.  But contrary to Plaintiffs' claims, the regulations are well-within the

scope of the Secretary's authority and embody a reasonable construction of the term

"subcontract" as that term is used in both the statutes and the Executive Order, which is entitled

to substantial deference by the Court.

As explained above, Congress and the President have expressly authorized the Secretary

of Labor to promulgate regulations implementing these provisions.  *See* 29 U.S.C. § 793(a)(1)

(authorizing the President to implement the provisions of this section by promulgating

regulations); *id.*, § 793(c)(1) (authorizing the President to promulgate regulations prescribing

guidelines regarding waiver of affirmative action clause); E.O. 11758, 39 Fed. Reg. 2075 (Jan.

15, 1974) (delegating all of President's authority under Section 503 to Secretary of Labor); 38

U.S.C. § 4212(a)(2) (authorizing Secretary of Labor to prescribe regulations which require

affirmative action to employ qualified veterans under such contracts and subcontracts); E.O.

11246, § 201 ("The Secretary of Labor shall be responsible for the administration of Parts II and

III of this Order and shall adopt such rules and regulations and issue such orders as he deems

necessary and appropriate to achieve the purposes thereof.").

Plaintiffs' challenge to the Secretary's interpretation of the term "subcontract" is

governed by the familiar two-part inquiry first set forth in *Chevron*, *USA v. Natural Resources*

*Defense Council*, 467 U.S. 837 (1984).  "[I]f the statute speaks clearly 'to the precise question at issue,'" the Court "must give effect to the unambiguously expressed intent of Congress." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (*quoting Chevron*, 467 U.S. at 842-843).  "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole," *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988), and "'employ[] traditional tools of statutory construction,' – including, when appropriate, legislative history – to determine whether Congress 'had an intention on the precise question at issue.'"  *Ohio v. U.S. Dept. of the Interior*, 880 F.2d 432, 441 (D.C. Cir. 1989).

Here, Section 503, the VEVRAA, and the Executive Order, by their terms, apply not only to contracts with a Federal department or agency but also to "any subcontract . . . entered into by a prime contractor in carrying out any such contract."  29 U.S.C. § 793(a);  38 U.S.C. § 4212(a)(1); E.O. 11246, § 202(7) ("The contractor will include the provisions of Paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rule, regulations or orders of the Secretary of Labor . . . so that the provisions may be binding upon each subcontractor or vendor.").  But despite these explicit references to "subcontract," neither Section 503 nor the VEVRAA nor the Executive Order define the term.  Thus, this is not a situation where the statute itself addresses the "precise question at issue" – specifically, what type of agreement constitutes a "subcontract."

Where "the statute is silent or ambiguous with respect to the specific issue," the Court "must sustain the Agency's interpretation if it is 'based on a permissible construction' of the Act." *Barnhart*, 535 U.S. at 218 (*quoting in part Chevron*, 467 U.S. at 843).  "The court need not conclude that the agency construction was the only one it permissibly could have adopted to

-16-

uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11.  Instead, "the court must defer to the agency's interpretation of the statute so long as it is reasonable and consistent with the statutory purpose." *National Ass'n of Mfrs. v. U.S. Dept. of the Interior*, 134 F.3d 1095, 1106 (D.C. Cir. 1998) (*quoting in part Ohio v. U.S. Dept. of the Interior*, 880 F.2d at 441). Moreover, if "Congress has 'explicitly left a gap for the . . . agency to fill,' the agency's regulation is 'given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" *Household Credit Serv. v. Pfennig*, 541 U.S. 232, 239 (2004) (*quoting in part Chevron*, 467 U.S. at 843-844).

The regulation satisfies that standard here.  The regulation defines "subcontract" as an agreement or arrangement between a contractor and any person, where the parties do not stand in the relationship of an employer and an employee, (1) for the purchase, sale or use of personal property or nonpersonal services "necessary to the performance of any one or more contracts" or (2) under which any portion of the contractor's obligation under a contract is performed, undertaken or assumed.  41 C.F.R. § 60-1.3.  The regulatory definition closely tracks the language of the underlying statutes, both of which refer to contracts "for the procurement of personal property and nonpersonal services" and subcontracts "entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States."  29 U.S.C. § 793(a); 38 U.S.C. § 4212(a).  The regulation is thus plainly consistent with the language of both statutes and plaintiffs' claims to the contrary are groundless.

The regulation is likewise fully consistent with the Executive Order, which does not define the term "subcontract."  As set out above, section 201 of the Order grants the Secretary

broad discretionary authority to adopt such rules and regulations "as he deems necessary and appropriate to achieve the purposes [of Parts II and III of the Executive Order]."  In addition, section 204 of the Order confers broad discretion on the Secretary, "when he deems that special circumstances so require," to exempt a contracting agency from including the required clauses in "any specific contract, subcontract, or purchase order."  Section 204 also authorizes the Secretary to exempt "classes" of contracts and subcontracts that are: to be performed outside the United States, for standard commercial supplies or raw materials, involve "less than specified amounts of money or specified numbers of workers," or "subcontracts below a specified tier." In sum, the Secretary has broad discretion to determine which subcontracts should be covered and which should be exempt consistent with the underlying purposes of the Order.

As the Supreme Court explained in *Chrysler Corp. v. Brown*, the Executive Order "establishes a program to eliminate employment discrimination by the Federal Government and by those who benefit from Government contracts."  441 U.S. 281, 304 (1979).  That purpose is consistent with the Federal Property and Administrative Services Act of 1949, as amended, which prohibits sex discrimination in "any program or activity carried on or receiving Federal assistance under this subtitle,"  40 U.S.C. § 122(a), and authorizes the President to "prescribe policies and directives that the President considers necessary to carry out this subtitle."  40 U.S.C. § 121(a); *Volvo GM Heavy Truck Corp. v. U.S. Dept. of Labor*, 118 F.3d 205, 212 n.9 (4th Cir. 1997) ("Volvo GM's argument ignores another, at least as salient purpose of the Act, which is to ensure that federal contractors, such as Volvo GM, are not engaged in impermissible discrimination.").  It is also consistent with Title VII of the Civil Rights Act of 1964 which, as President Johnson noted in amending Executive Order 11246, "enunciated a national policy of equal employment opportunity in private employment, without discrimination because of race,

-18-

color, religion, sex or national origin." E.O. 11375, 32 Fed. Reg. 14303 (Oct. 13, 1967). Thus,

"E.O. 11246 is itself firmly rooted in congressionally delegated authority." *United States v.*

*Mississippi Power & Light Co.*, 638 F.2d 899 (5th Cir. 1981); *Contractors Ass'n of Eastern*

*Pennsylvania v. Secretary of Labor*, 442 F.2d 159, 170 (3rd Cir. 1971) (Executive Orders

prohibiting employment discrimination "would seem to be authorized by the broad grant of

procurement authority with respect to Titles 40 and 41").

  The definition of "subcontract" in the regulation furthers these purposes by broadly

seeking to eliminate employment discrimination by federal contractors and subcontractors.

Given the breadth of the Secretary's discretion under the Order to decide which subcontracts

should be exempt from the non-discrimination requirements of the Executive Order, there is no

basis for plaintiffs' allegation that the regulation is inconsistent with that Order.

  In sum, the regulation is fully consistent with both the statutes and the Executive Order

and in accord with their overall purpose of combating discrimination by those who benefit from

federal contracts and subcontracts. Because the Secretary's interpretation is neither arbitrary and

capricious nor manifestly contrary to either the statute or the Executive Order, it is entitled to

substantial deference by the Court. *Household Credit Serv.*, 541 U.S. at 239; *see also National*

*Ass'n of Mfrs.*, 134 F.3d at 1106 (*quoting in part Ohio v. U.S. Dept. of the Interior*, 880 F.2d at

441).

## II. The Regulations Have the Force and Effect of Law and Are Binding Upon Plaintiffs Regardless of Whether They Have Affirmatively Agreed to Comply With Them

### A. The Equal Opportunity Clauses Are Incorporated By Operation Of Law Into Every Non-Exempt Government Contract

  The Plaintiffs contend that because their contract with UPMC Health Plan did not contain

clauses requiring compliance with the non-discrimination requirements in Section 503,

VEVRAA, and the Executive Order, they are not required to comply with either of the statutes, the Executive Order, or the Secretary's implementing regulations. *See* Compl. ¶¶ 67-68. As we explain below, however, each of these provisions, along with the implementing regulations, are incorporated into the Plaintiffs' contracts by operation of law, and remain binding regardless of whether the Plaintiffs consent to them.

The Federal Circuit has long held that "a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract by operation of law." *S.J. Amoroso Construction Co.*, 12 F.3d at 1075; *General Engineering & Machine Works v. O'Keefe*, 991 F.2d 775, 779 (Fed. Cir. 1993); *G.L. Christian and Assoc. v. United States*, 312 F.2d 418, 426 (Ct. Cl.) *cert. denied* 375 U.S. 954 (1963)). That principle applies regardless of whether the clause was "intentionally or inadvertently omitted" as the application of the doctrine turns on "whether procurement policies are being 'avoided or evaded (deliberately or negligently)'". *S. J. Amoroso Const. Co.*, 12 F.3d at 1075 quoting in part *G.L. Christian*, 320 F.2d at 351.

As the D.C. Circuit has recognized in discussing another mandatory contract clause providing for termination for the convenience of the Government, "[a] fundamental difference between government procurement and private contract litigation is evidenced by the clause, standard and required in government contracts, whereby the government reserves the right, even in the case of a duly executed contract, to terminate the contract 'for the convenience of the government.'" *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1304 (D.C. Cir. 1971). As the court explained, "[e]ven if this clause is omitted from a particular contract it will be incorporated into the contract by operation of law since it is required by [the Armed Services Procurement Regulations] and this requirement has the force and effect of law." *Id.*, 455 F.2d at1304 (citing

*G.L. Christian*); *accord United States v. New Orleans Public Serv., Inc.,* 553 F.2d 459, 469 (5th Cir. 1977) ("*NOPSI*") ("where regulations apply and require the inclusion of a contract clause in every contract, the clause is incorporated into the contract, even if it has not been expressly included in a written contract or agreed to by the parties") *vacated on other grounds* 436 U.S. 942 (1978) *reaffirmed after remand United States v. Mississippi Power & Light Co.*, 638 F.2d at 905.

Like the termination for convenience clause discussed by the D.C. Circuit in *Steinthal*, the implementing regulations at issue here provide that the equal opportunity clauses mandated by the governing statutes and executive order "shall be considered to be a part of every contract and subcontract required by the [relevant law] and regulations . . . to include such a clause whether or not it is physically incorporated in each such contract and whether or not the contract between the agency and the contractor is written."  41 C.F.R. §§ 60-1.4(e); 60-250.5(e); 60-741.5(e).  And like the regulation in *Steinthal*, the regulations at issue here have the force and effect of law.

Because "[t]he legislative power of the United States is vested in the Congress, and the exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations that body imposes," a regulation has "force and effect of law" only if it is issued pursuant to statutory authority. *Chrysler Corporation v. Brown*, 441 U.S. 281, 302 (1979).  The key question is whether there is a "nexus between the regulations and some delegation of the requisite legislative authority by Congress."  *Qwest Communications Int'l. Inc. v. F.C.C.*, 229 F.3d 1172, 1177 (D.C. Cir. 2000) (quoting *Chrysler*, 441 U.S. at 304).

There can be no serious dispute that there is a "nexus" between the nondiscrimination

regulations at issue here and a delegation of requisite legislative authority by Congress in the

governing statutes.  Section 503(a) of the Rehabilitation Act provides that "[a]ny contract in

excess of $10,000 entered into by any Federal department or agency for the procurement of

personal property and nonpersonal services . . . shall contain a provision requiring that the party

contracting with the United States shall take affirmative action to employ and advance in

employment qualified individuals with disabilities."  29 U.S.C. § 793(a).  That same section

imposes the same requirement on "any subcontract in excess of $10,000 entered into by a prime

contractor in carrying out any contract for the procurement of personal property and nonpersonal

services (including construction) for the United States."  *Id.*  Moreover, Congress expressly

delegated authority to the President to promulgate regulations implementing that section, *id.*, and

authorized the Secretary of Labor to investigate complaints, take appropriate enforcement action

and, when appropriate, to waive the requirements of the affirmative action clause required by the

regulations.  *Id.* at § 793(b) and (c). By Executive Order, the President designated and

empowered the Secretary of Labor to exercise all of the President's regulatory authority under

section 503.  E.O. 11758, 39 Fed. Reg. 2075 (Jan. 15, 1974).

Similarly, VEVRAA provides that "[a]ny contract in the amount of $100,000 or more

entered into by any department or agency of the United States for the procurement of personal

property and nonpersonal services (including construction) for the United States, shall contain a

provision requiring that the party contracting with the United States take affirmative action to

employ and advance in employment qualified covered veterans."  38 U.S.C. § 4212(a)(1).  This

provision likewise applies to "any subcontract in the amount of $100,000 or more entered into

by a prime contractor in carrying out any such contract."  *Id.*  Moreover, VEVRAA, like section

503, expressly delegates authority to the Secretary of Labor to promulgate regulations requiring

"affirmative action to employ such qualified covered veterans and . . . to promote the implementation of such requirement," *id.* at § 4212(a)(2), and to impose reporting requirements on contractors to ensure compliance with the Act.  *Id.*, § 4212(d).

Finally, Executive Order 11246 provides that Federal agencies must include in their contracts and subcontracts provisions concerning equal employment opportunity under which contractors must agree that they "will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin" and to "take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to" such characteristics.  E.O. 11246, § 202.  As we explained in Point I, *supra* at 17-18, the non-discrimination mandate in the Executive Order is well within the President's authority under the Federal Property and Administrative Services Act as well as the national policy established by Title VII.  And similar to both Section 503 and the VEVRAA, section 201 of Executive Order 11246 delegates enforcement of the Executive Order to the Secretary of Labor, who "shall adopt such rules and regulations and issue such orders as are deemed necessary and appropriate to achieve the purposes of Parts II and III of this Order."

Thus, the regulations at issue here fall well within the authority delegated to the Secretary of Labor by Congress and the President, and there is a close nexus between the regulations and the underlying nondiscrimination mandate in both statutes and the Executive Order.  Accordingly, the regulations have the "force and effect of law," *Chrysler*, 441 U.S. at 302, and remain binding regardless of whether mandated clauses were included in the Plaintiffs' contracts."  *M. Steinthal & Co.*, 455 F.2d at 1304.

**B.     Neither Congress Nor The President Has Delegated Authority To
Contracting Agencies To Exempt Plaintiffs' Contracts From
The Non-Discrimination Requirements of Federal Law**

Plaintiffs allege that they are exempt from compliance with requirements of either the

statutes or the Executive Order because the contract between the UPMC Health Plan and OPM

defines the term "subcontractor" to exclude "providers of direct medical services or supplies"

such as the Plaintiffs.  Compl. ¶¶ 49-53.[7]  The fundamental difficulty with this contention is that

neither the UPMC Health Plan nor a federal contracting agency is empowered to override the

mandatory requirements of two federal statutes and an Executive Order.  Parties cannot, by

contract, override federal law even where an executive agency is a contracting party.  To the

contrary, provisions in "a government contract that violate[] or conflict[] with a federal statute

[are] invalid or void."  *See Burnside-Ott Aviation Training Center v. Dalton*, 107 F.3d 854 (Fed.

Cir. 1997) (provision in Navy contract was invalid because it conflicted with Contract Disputes

Act); *American Airlines, Inc.,* v. *Austin,* 75 F.3d 1535 (Fed. Cir. 1996) (airline ticket provisions

were invalid because they conflicted with statute);  *see Javins v. First National Realty*

*Corporation*, 428 F.2d 1071, 1081-1082 (D.C. Cir. 1970) ("[T]he housing code must be read into

housing contracts . . . [and] [t]he duties imposed by the Housing Regulations may not be waived

or shifted by agreement if the Regulations place the duty upon the lessor.").  Similarly, when an

agency "has been given government-wide authority for the administration of this program now

incorporated into the public contracts system, the controversy cannot be meaningfully

---

[7]  The contract between UPMC and OPM defines "subcontractor" as "[a]ny supplier, distributor,
vendor or firm that furnishes supplies or services to or for a prime contractor, or another
subcontractor, *except for providers of direct medical services and supplies* pursuant to the
Carrier's health benefits plan."  AR 776 (Joint Exh. 6, Contract between OPM and UPMC
Health Plan, § 1.1) (emphasis added).

-24-

considered . . . by presuming authority in the procurement officials, typically located in other departments and agencies, to disregard the mandate of the department given responsibility for the new program." *Northeast Construction Company v. Romney*, 485 F.2d 752, 761 (D.C. Cir. 1973).  As the Federal Circuit explained in *S. J. Amoroso Const. Co.*, a mandatory contract clause, such as those at issue here, is considered to be incorporated in the contract, regardless of whether the clause was "intentionally or inadvertently omitted.."  12 F.3d at 1075.

The authority to administer Section 503 and VEVRAA, as well as the pertinent portions in the Executive Order, is vested not in the UPMC Health Plan, nor in federal contracting agencies such as OPM, but in the Secretary of Labor.  29 C.F.R. § 793(a) and (c); E.O. 11758 (delegating President's authority under Section 503 to the Secretary of Labor); 38 U.S.C. § 4212(a)(2); E.O. 11246, §§ 201 and 204.  Moreover, given the delegation of authority from the President in section 204 of Executive Order 11246, and the delegation of the President's authority under section 503 in Executive Order 11758, the Secretary of Labor has the exclusive authority to exempt contracting parties from compliance with the nondiscrimination requirements of section 503 and Executive Order 11246.  Absent such a waiver, non-exempt parties, such as the Plaintiffs, remain subject to the requirements of the Executive Order, both statutes and their accompanying regulations, and the contracting parties are simply not empowered to override those requirements by agreement.

**III.   The Administrative Review Board's Determination That Plaintiffs
        Are "Subcontractors" Is Rational and Fully Supported by the Record**

The regulations define "subcontract" as:

an agreement or arrangement between a contractor and any person (in which the parties do not stand in the relationship of an employer and an employee):

(1) For the purchase, sale or use of personal property or nonpersonal services

> which, in whole or in part, is necessary to the performance of any one or more contracts; or
>
> (2) Under which any portion of the contractor's obligation under a contract is performed, undertaken or assumed.

41 C.F.R. §§ 60-1.3, 60-741.2, 60-250.2(l). The ARB determined that the Plaintiffs' agreements with the UPMC Health Plan were "subcontracts" within the meaning of this provision. Specifically, the ARB found that: (a) the medical services provided by the Plaintiffs are "nonpersonal services" within the meaning of the regulation, [AR 1229-30 (ARB Final Decision and Order at 9-10)]; (b) the medical services furnished by the Plaintiffs were both "necessary to the performance" of the UPMC Health Plan's contract with OPM and constituted a portion of the Health Plan's obligations under its contract with OPM, [*see* AR 1230 (ARB Final Decision and Order at 10)]; and (c) OFCCP's March 17, 2003 Policy Directive [Dkt # 1-8], which was based on the ARB's prior decision in *OFCCP v. Bridgeport Hospital*, ARB No. 00-034 (Jan. 31, 2003), does not excuse the Plaintiffs from their obligation to comply with the equal opportunity clauses mandated by Section 503, VEVRAA, and E.O. 11246, [AR 1230-31 (ARB Final Decision and Order at 10-11)] . As we explain below, the ARB's decision on each of these points is eminently rational and fully supported by the record, and Plaintiffs' claim that the decision is arbitrary and capricious is wholly without merit.

### A.   The Medical Services Provided by Plaintiffs Are "Nonpersonal Services"

In the administrative proceedings before the ARB, the Plaintiffs argued that the medical services that they provide are "personal services." Since the regulations define the term "subcontract" as an agreement for the purchase, sale or use of "nonpersonal services," the Plaintiffs contended that their agreements with the UPMC Health Plan are not "subcontracts" and hence that they are not required to comply with federal equal opportunity requirements.

-26-

ARB Final Decision and Order at 9.  As we explain below, however, the term "personal

services" has a well established meaning in the context of federal procurement law, and does not

encompass the types of services performed by the Plaintiffs.

      Neither Section 503, VEVRAA, the Executive Order, nor the regulations implementing

these provisions, define the term "nonpersonal services."  However, as both the ALJ and the

ARB found, [AR 1143-1145 (ALJ Recommended Decision and Order at 11-13), AR 1229-30

(ARB Final Decision and Order at 9-10)], the term "nonpersonal services" is defined in the

Federal Acquisition Regulations ("FAR") as follows:  "Nonpersonal services contract means a

contract under which the personnel rendering the services are not subject, either by the contract's

terms or by the manner of its administration, to the supervision and control usually prevailing in

relationships between the Government and its employees."  48 C.F.R. § 37.101.  By contrast, the

FAR defines a "personal services contract" as a contract that is "characterized by the employer-

employee relationship it creates between the Government and the contractor's personnel."  48

C.F.R. § 37.104(a).  "An employer-employee relationship under a service contract occurs when,

as a result of (i) the contract's terms or (ii) the manner of its administration during performance,

contractor personnel are subject to the *relatively continuous supervision and control* of a

Government officer or employee."  48 C.F.R. § 37.104(c)(1) (emphasis added).[8]

---

[8]  The FAR at 48 C.F.R. § 37.104(d) provides the following descriptive elements as a guide in
assessing whether a proposed contract is personal in nature:
(1) Performance on site;
(2) Principal tools and equipment furnished by the Government;
(3) Services are applied directly to the integral effort of agencies or an organizational subpart in
furtherance of assigned function or mission;
(4) Comparable services, meeting comparable needs, are performed in the same or similar
agencies using civil service personnel;
(5) The need for the type of service provided can reasonably be expected to last beyond one
year; (6) The inherent nature of the service, or the manner in which it is provided reasonably

The agency acted well within its authority in interpreting the term "nonpersonal services" in a manner consistent with the Federal Acquisition Regulations.  An agency's interpretation of its own regulation is entitled to substantial deference and must be upheld unless "plainly erroneous or inconsistent with the regulation."  *Air Transport Ass'n of America v. FAA*, 291 F.3d 49, 53 (DC Cir. 2002).  Courts must defer to the agency's interpretation unless "an alternative reading is compelled by the regulation's plain language or by other indications of [the agency's] intent at the time of the regulation's promulgation."  *Id.*  (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).  The term "nonpersonal services" is not defined in either Section 503 or in VEVRAA; nor is it defined in the agency's implementing regulations.  Given the absence of a regulatory definition of the term and the fact that the statutes and Executive Order at issue here are intended to apply to federal contracts and subcontracts, the agency's decision to look to the Federal Acquisition Regulations for guidance regarding the intended meaning of the term "nonpersonal services" is manifestly reasonable.  Moreover, there is nothing in either the plain language of the regulation or any other indication of the agency's intent which would compel an "alternative reading."  In these circumstances, the Court should defer to the agency's interpretation of the regulation.

The agreements entered into by the Plaintiffs with the UPMC Health Plan do not create a "personal services" contract that is "characterized by the employer-employee relationship it creates." AR 1230 (ARB Final Decision and Order at 10).  As the ARB explained:

---

requires directly or indirectly, Government direction or supervision of contractor employees in order to—
    (i) Adequately protect the Government's interest;
    (ii) Retain control of the function involved; or
    (iii) Retain full personal responsibility for the function supported in a duly authorized Federal officer or employee.

-28-

> The ALJ found that the Defendants provided "nonpersonal services" because they were neither in an employer-employee relationship with the UPMC nor under the supervision and control that an employer would exercise over its employees. They also had significant autonomy in the performance of their contracts. Therefore their contracts met the regulatory definition of "subcontract" at 41 C.F.R. § 60-1.3.

AR 1230 (ARB Final Decision and Order at 10). Indeed, the Plaintiffs' own contracts with UPMC belie any assertion that Plaintiffs had anything but autonomy in the performance of their contracts. Section 4.5 of the Participating Hospital Agreements signed by the individual Plaintiffs and UPMC Health Plan state that

> The relationship between BHC and Hospital is that of independent contractors, and neither shall be considered an agent or representative of the other for any purpose. BHC and Hospital will each be liable solely for their own activities and neither BHC nor Hospital shall be liable for the activities of the other.

AR 139, 307, 588 (Participating Hospital Agreement).[9] As "independent contractors" who do not share any liability, Plaintiffs and UPMC are clearly not in an employer-employee relationship. Rather, as the ARB correctly found and as is supported by the record, Plaintiffs had significant autonomy in the performance of their duties and therefore, provided "nonpersonal" services.

### B.      The Medical Services Provided by Plaintiffs Were "Necessary to the Performance" of the Health Plan's Contract with OPM

The ARB also determined that the medical services provided by Plaintiffs are "necessary to the performance" of the UPMC Health Plan's contract with OPM. In that regard, the ARB concluded that "[t]he UPMC's contract with OPM required the UPMC to put a health maintenance organization (HMO) into operation," and noted that the Supreme Court has "characterized an HMO as a health care delivery system defined by the providing of medical

---

[9]  "The parties have stipulated that: (1) UPMC Health Plan, Inc. was previously Best Health Care of Western Pennsylvania, Inc." AR 139, 307, 588 (Participating Hospital Agreement)

benefits and the assumption of financial risk in providing those benefits." ARB Decision at 11

(citing *Rush Prudential v. Moran*, 536 U.S. 355, 370 (2002)). More importantly, the UPMC

Health Plan was required to provide medical services to eligible participants under its contract

with OPM, and depended upon the Plaintiffs to furnish those services. As the ARB explained:

> According to the UPMC Health Plan brochure, the Health Plan "is a health maintenance
> organization (HMO)" that "contract[s] with individual physicians, medical groups and
> hospitals to provide the benefits in this brochure." The benefits listed include medical
> services and supplies and surgical and anesthesia services, which are provided by
> physicians and health care professionals. Also among the benefits provided are
> emergency services, mental health and substance abuse services, prescription drug
> benefits, and dental benefits. Provision of medical services and supplies was thus a
> critical component of the UPMC's contract. The contract depended on medical providers
> like the [Plaintiffs] to offer medical services and supplies necessary for the UPMC to
> meet its obligations under its contract with OPM.

AR 1231 (ARB Decision at 11).

The ARB's findings and conclusions are fully supported by the administrative record in

this case. UPMC Health Plan has had a contract with OPM since January 1, 2000. AR 37

(Stipulated Facts at ¶ 21). That agreement, Contract No. CS 2856, states in Part II – Benefits,

"The Carrier shall provide the benefits as described in the agreed upon brochure text found in

Appendix A." AR 789 (2003 FEHB Standard Contract for Community Rated Maintenance

Organization Carriers, § 2.2(a)). This brochure, which was referred to by the ARB in its

decision, is a 60-plus page document replete with detailed descriptions of those benefits. AR

848 (Brochure). The brochure states in the Introduction, "This brochure describes the benefits of

UPMC Health Plan under our contract (CS 2856) with the Office of Personnel Management

(OPM) as authorized by the Federal Employees Health Benefits law. This brochure is the

official statement of benefits." AR 857 (UPMC Health Plan, p. 4). According to the brochure,

which, as noted above, is part of the contract, UPMC Health Plan "is a health maintenance

organization (HMO)" that "*contract[s] with individual physicians, medical groups, and hospitals to provide the benefits in this brochure.*"  (Emphasis added.)  With limited exceptions, UPMC Health Plan requires that participants get their care from these providers.  AR 859 (UPMC Health Plan, § 1, p. 6).

The benefits that the UPMC Health Plan agrees to provide under its contract with OPM include:

Medical services and supplies provided by physicians and other health care professionals (AR 867, § 5(a), pp. 14-25);

Surgical and anesthesia services provided by physicians and other health care professionals (AR 879, § 5(b), pp. 26-30);

Services provided by a hospital or other facility, and ambulance services (AR 884, § 5(c), pp. 31-33);

Emergency services/accidents (AR 887 § 5(d), pp. 34-35);

Mental health and substance abuse benefits (AR 889, § 5(e), pp. 36-37);

Prescription drug benefits (AR 891, § 5(f), pp. 38-41); and

Special Features" and "Dental benefits (AR 895, §§ 5(g) and (h), pp. 42-43).

All such benefits "are provided in full unless [otherwise] indicated [in the brochure] and are subject to the definitions, limitations, and exclusions" in the brochure.  AR 912, unnumbered page following p. 58 ("Summary of Benefits for the UPMC Health Plan").  Federal employees, annuitants, former spouses, and temporarily-covered former Federal employees or dependents may enroll and receive these benefits by paying the rates specified in the brochure.  AR 776 at §§ 1.1 ("Enrollee"), 2.1(a) and 2.2(a); AR 913, second unnumbered page following p. 58 ("2003 Rate Information for UPMC Health Plan").

Contract No. CS 2856 also contains several provisions requiring that the UPMC Health

-31-

Plan meet certain standards on "the quality of the health care services it provides to its members

..." and implement a patient safety improvement program.  AR 778-79 at § 1.9(b) and (c).  This

undisputed evidence demonstrates that UPMC Health Plan has an agreement with a contracting

agency for the purchase, sale or use of personal property (medical supplies) and nonpersonal

services (medical services), as well as for insurance reimbursement.[10]  Therefore, UPMC Health

Plan is a contractor, as that term is defined at 41 C.F.R. § 60-1.3.

As UPMC Health Plan stated in the brochure appended to Contract No. CS 2856, it

"contract[s] with individual physicians, medical groups, and hospitals to provide the benefits in

this brochure."  AR 859, § 1, p. 6.  Among the hospitals providing these benefits are Plaintiffs,

who, as evidenced by the Administrative Record, provided services pursuant to their contracts

with UPMC Health Plan that are necessary to the performance of the OPM-UPMC contract.[11]

### C.   OFCCP 2003 Policy Directive Does Not Excuse The Plaintiffs From Complying With the Equal Opportunity Clauses

In their Complaint, Plaintiffs allege that a Policy Directive issued by OFCCP on March

17, 2003 relieves them of their obligation to comply with the anti-discrimination statutes and the

---

[10]  The insurance component of UMPC Health Plan does not undercut the fact that it still agreed to provide medical services in its contract with OPM.  Such is typical of an HMO.  As the Supreme Court recognized in *Rush Prudential HMO v. Moran,* 536 U.S. at 370:  "[V]irtually all commentators on the American health care system describe HMOS as a combination of insurer and provider . . . ."

[11]  As the ARB noted, Plaintiffs also meet the second prong of the regulatory definition of "subcontractor" because, pursuant to their agreements with the Health Plan, a "portion of the contractor's obligation under a contract is performed, undertaken or assumed."  41 C.F.R. § 60-1.3.  As discussed above, Plaintiffs provide an essential part of UMPC's contract with OPM: medical services.  *See* Compl. ¶¶ 22, 23, 29, 30, AR 32 (Stipulated Facts ¶¶ 9, 11, 13, 15).  As the ARB correctly determined, UPMC's contract with OPM "depended on medical providers like [the Plaintiffs] to offer medical services and supplies necessary for the UPMC to meet a portion of its obligation under its contract with OPM to put an HMO into operation."  ARB Decision at 11.

Executive Order.  Compl. ¶¶ 44-47.  A copy of the Policy Directive is appended to Plaintiffs'

Complaint in this action. [Dkt # 1-8].  As the Policy Directive itself reflects, however, the

Directive was issued in response to the ARB's January 31, 2003 decision in *OFCCP v.*

*Bridgeport Hospital*, in which "[t]he ARB upheld an earlier ruling by the Administrative Law

Judge concluding that the contract between OPM and Blue Cross did not obligate Blue Cross to

provide medical services and supplies to government employees.  Rather, the contract obligated

Blue Cross to provide health insurance."  Dkt. #1-8, ¶ 3; *see also OFCCP v. Bridgeport*

*Hospital*, ARB Case No. 00-034, 2003 WL 244810 *4 (Jan. 31, 2003), ("Blue [Cross] did not

contract with OPM to provide its policyholders with medical services.  Blue [Cross] contracted

with OPM to provide reimbursement to its policyholders for medical care costs.").  It is in that

context that OFCCP issued a Policy Directive which states that "based [on] the ARB decision,

OFCCP cannot use FEHBP coverage as a basis to assert jurisdiction over a health care provider."

Dkt. # 1-8, ¶ 4.

 However, as the ARB found, the UPMC Health Plan's obligations under its contract with

OPM differ significantly from those undertaken by Blue Cross.  "Unlike Blue Cross, the UPMC

is more than an insurer."  ARB Decision at 11.  As discussed in Point III.B. above, UPMC has

undertaken the obligation to operate an HMO and to provide a panoply of medical services under

standards prescribed in its contract with OPM.  In contrast to Blue Cross, "[p]rovision of medical

services and supplies was a critical component of the UPMC's contract" with OPM, and "[t]he

contract depended on medical providers like the [Plaintiffs] to offer medical services and

supplies necessary for UPMC to meet its obligations under its contract with OPM."  ARB Final

Decision and Order at 11.  Accordingly, neither the *Bridgeport* decision nor the Policy Directive

that was issued based on *Bridgeport* is applicable to Plaintiffs here.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Defendants' motion for summary

judgment and enter a judgment upholding the Secretary's determination that the Plaintiffs are

required to comply with the nondiscrimination requirements of federal law.


September 23, 2010                           Respectfully Submitted,


Katherine E. Bissell                        TONY WEST
Associate Solicitor of Labor                Assistant Attorney General

Beverly Dankowitz                           RONALD C. MACHEN, JR.
Counsel for Litigation                      United States Attorney

Theresa Schneider Fromm                     JOSEPH W. LOBUE D.C. Bar #293514
Senior Trial Attorney                       Assistant Director
United States Department of Labor           Federal Programs Branch
Office of the Solicitor
200 Constitution Ave., N.W.                  /s/ Lily Sara Farel
Room N-2474                                 LILY SARA FAREL (NC Bar # 35273)
Washington, DC 20210                        United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave. N.W.
                                            Washington, D.C. 20001


*Of Counsel for Defendants*                 *Counsel for Defendants*

-34-