UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UPMC BRADDOCK, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:09-cv-01210-PLF |
| v. | ) ) ) | **Honorable Paul L. Friedman** |
| HILDA L. SOLIS, Secretary, United States Department of Labor, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' BRIEF IN RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, UPMC Braddock, UPMC McKeesport and UPMC Southside (collectively "hospitals"), file the following Response Brief in accordance with the Court's June 2, 2010 and September 14, 2010 Scheduling Orders.

**INTRODUCTION**

The majority of the arguments raised by the defendants in their Summary Judgment Motion and initial Brief are specifically addressed by the hospitals in their initial Memorandum. The hospitals, therefore, will not burden the Court with extensive briefing in response to defendants' Motion for Summary Judgment. There are, however, four issues that the hospitals wish to highlight for the Court.

**1.      Many Of Defendants' Arguments Originate From the Faulty Assumption That the Hospitals *Are* Government Subcontractors**

The defendants, throughout their initial Brief, reiterate the obvious fact that the Executive Order, VEVRAA and Section 503 of the Rehabilitation Act (and their corresponding regulations) make reference to both government contractors and subcontractors. This is a point the hospitals do not dispute. Rather, the hospitals dispute the Administrative Review Board's (ARB's) conclusion

that the hospitals *are* government subcontractors. Defendants spend little time addressing this threshold issue, proceeding instead to base much of their argument on the faulty assumption that the hospitals qualify as government subcontractors subject to OFCCP jurisdiction.

For example, defendants argue at length regarding the Secretary of Labor's authority to issue an "exemption" to a subcontractor. Specifically, defendants argue that the hospitals never sought an "exemption" from the Secretary of Labor regarding their alleged government subcontractor status. This argument obviously *assumes* that the hospitals are in fact government subcontractors for whom an exemption is necessary. Indeed, to be "exempted" from something one must first qualify for it.[1] It has been the hospitals' position, from the outset of this matter, that they are not government subcontractors, in which case there is nothing to "exempt" them from.

To suggest, as defendants have, that the hospitals should have applied for an exemption is, quite frankly, absurd. OPM, in its contract with the Health Plan, *specifically informed* all parties that the hospitals *do not* qualify as government subcontractors.[2] It is obvious, therefore, that the hospitals had no reason to assume they were government subcontractors and no reason to apply to the Secretary of Labor for an exemption. Moreover, OFCCP promulgated Policy Directive 262, which Directive specifically confirms the fact that the hospitals, by virtue of their Payment Agreements with the Health Plan, *are not* government subcontractors subject to OFCCP jurisdiction (*see* Section 4, below). To suggest now, years after OPM excluded the hospitals from the definition of subcontractor, and years after OFCCP confirmed this result, that the hospitals should have assumed they were subcontractors and applied for an exemption is nonsensical. Nevertheless, this

---

[1] To "exempt" means "to free from an obligation or duty required of others; to excuse; release." *The American Heritage Dictionary* 459 (1981).

[2] Indeed, OPM specifically defined the term subcontractor (to exclude the hospitals) in the one and only government contract under which defendants are contending the hospitals qualify as government subcontractors. (*See* AR 776 – containing the definitions applicable to the Health Plan's government contract, hereinafter referred to as the "OPM/Health Plan Contract")

is precisely the position taken by defendants. (*See, e.g.*, defendants' SJ Brief at 3, where defendants contend that the hospitals were required to seek an exemption from the Secretary of Labor in order to avoid being bound by the equal opportunity clause ("EOC") applicable to government contractors and subcontractors.)[3] The Secretary of Labor's authority to issue an "exemption," therefore, is beside the point.

In the same vein, defendants rely on their "exemption" argument to avoid the express terms of the OPM/Health Plan Contract. Defendants – at both the administrative level and again before this Court – have advanced the position that the hospitals are at fault for not seeking an exemption, to which the hospitals have responded by stressing the obvious fact that they are not government subcontractors and had no reason to seek an exemption, given the express definition of "subcontractor" included (by OPM) in the OPM/Health Plan contract. Defendants – somewhat incredibly – respond by suggesting that the Health Plan and the hospitals were required to ignore the express terms of the OPM/Health Plan Contract, to disregard the definition of "subcontractor," and to proceed under the assumption that the hospitals qualified as government subcontractors. Defendants' explanation as to why the Health Plan and the hospitals were required to proceeded in this manner is set forth on page 25 of their Brief. According to defendants:

> The authority to administer Section 503 and VEVRAA, as well as the pertinent provisions of the Executive Order, is vested not in the UPMC Health Plan, nor in federal contracting agencies such as OPM, but in the Secretary of Labor. Moreover given the delegation of authority from the President in Section 204 of Executive Order 11246, and the delegation of the President's authority under section 503 in Executive Order 11758, the Secretary of Labor has the exclusive authority to exempt contracting parties from compliance with the nondiscrimination requirements of Section 503 and Executive Order 11246. **Absent such a waiver, non-exempt parties, such as the [hospitals], remain subject to the requirements of the Executive Order, both statutes and their**

---

[3] Defendants take this position despite the fact that no such clause is contained in any contract to which the hospitals are a party. (*See* Stipulated Fact 20, AR 36) Defendants' Summary Judgment Brief, cited above, is filed with the Court at Docket # 16 and will hereinafter be referred to as "defendants' SJ Brief."

>**accompanying regulations, and the contracting parties are simply not empowered to override those requirements by agreement.**

(defendants' SJ Brief at 25) (internal citations omitted) (emphasis added). According to defendants, therefore, OPM's definition of subcontractor is void and should be ignored *because the Secretary of Labor never issued an exemption to the hospitals*. (*See* defendants' SJ Brief at 25) Defendants' argument is circuitous. Obviously, no exemption was sought because the government informed the Health Plan (and the hospitals) that no exemption was necessary.[4]

With respect to the threshold issue in this case (*i.e.,* the hospitals status as government subcontractors) the hospitals have presented multiple reasons why they are not government subcontractors, and why, therefore, defendants' variety of arguments *assuming* government subcontractor status are unavailing. As explained in detail in the hospital's initial Memorandum (Docket # 17), the hospitals are not government subcontractors because: 1) The one and only prime government contract at issue in this case specifically says they are not; 2) OFCCP's own Policy Directive (No. 262) specifically says they are not; 3) under OFCCP's own regulations, the hospitals

---

[4] In the same section of their Brief, defendants contend that OPM's definition of subcontractor must be disregarded because it "overrides federal law." (*See* defendants' SJ Brief at 24, where defendants contend that the hospitals qualify as subcontractors despite the terms of the applicable government contract) It is not clear, however, in what way defendants contend that "federal law" is being overridden. Defendants appear to focus their argument on the exemption issue, which, for the reasons addressed above, is not relevant to the circumstances presented. That being said, to the extent defendants' reference to "federal law" is intended to encompass, generally, the EOC provisions of the Executive Order, Section 503 of the Rehabilitation Act and VEVRAA (which provisions require that federal agencies and prime government contractors include an EOC in their qualifying government subcontracts), defendants' argument is similarly unavailing. First, it is obvious that the EOC provisions of the foregoing laws cannot be violated by alleged subcontractors, such as the hospitals. (*See* the hospitals' initial Memorandum – filed with the Court at Docket # 17 – at page 30) Second, defendants are once again assuming that the hospitals qualify as government subcontractors, and that the EOC provisions of the Executive Order, Section 503 of the Rehabilitation Act and VEVRAA are applicable to the Payment Agreements between the Health Plan and the hospitals. As explained herein, however, the Health Plan had *no* obligation to include an EOC in its Payment Agreements with the hospitals (*see* Section 3, below). Moreover, defendants' assumption that the hospitals qualify as government subcontractors finds no support in the record or in the applicable case law.

were providing personal services (not "nonpersonal services") to individuals insured by UPMC Health Plan, and 4) the hospitals, as health care providers, were not providing services that the Health Plan (an insurer) agreed to provide.

To be entitled to summary judgment, the hospitals need only prevail on one of the foregoing arguments. That being said, and assuming (for the sake of argument) that defendants prevail on each and every one of the above arguments, such that the hospitals are considered "subcontractors" under the regulatory definition of the term, defendants' position still fails. At that point, and only at that point, the validity of the incorporation regulation is placed at issue.[5] Obviously, because the hospitals never signed a contract containing an EOC subjecting them to OFCCP oversight, defendants must take the position that such a clause may – consistent with the law – be "incorporated" into the various Payment Agreements between the hospitals and the Health Plan. The hospitals have already explained, at length, why the "incorporation" regulation cannot lawfully be applied against them under the circumstances presented in this case. (*See* pages 31-41 of the hospitals' initial Memorandum) Defendants, in their initial Brief, cite no authority to alter this result.

**2.      Defendants' Arguments, As Set Forth In Their Initial Brief, Fail to Address the Central Issues Presented in This Case**

As a general observation, defendants' initial Brief fails to address the specific circumstances underlying the parties dispute. Indeed, when addressing the governing law, and when recounting the undisputed facts, defendants overlook critical factors that are central to the proper disposition of this matter.

---

[5] If it is determined that the Payment Agreements between the hospitals and the Health Plan are *not* deemed to be government subcontracts (under any of the arguments advanced by the hospitals in this case), then the validity of the incorporation regulation is beside the point, as there would be no government "subcontract" into which an EOC could be incorporated.

By way of example, defendants, at the outset of their Brief, discuss the regulatory definition of subcontract and why the Secretary of Labor was empowered to promulgate such a definition. (*See* defendants' SJ Brief at 15, setting forth defendants' opening argument)  Defendants' argument misses the point.  For the reasons cited above, the hospitals were never government subcontractors – and even if they were, they were never properly subject to the "incorporation" regulation applied by the ARB in this case.

Despite the hospitals' arguments, defendants' Brief cites, at length, the general nondiscrimination provisions of the Executive Order, the government contracting laws and their related regulations.  What defendants' Brief fails to do, however, is to explain why, under the facts presented, the *unprecedented* expansion of OFCCP jurisdiction proposed by OFCCP and adopted by the ARB in this case is consistent with applicable law.  As explained in the hospitals' initial Memorandum, defendants are asking this Court to authorize the imposition of contractual employment obligations (as embodied in the Executive Order's EOC) on unsuspecting parties who never agreed to such a clause and who, necessarily, would have no knowledge of the clause's requirements.[6]

Rather than addressing the propriety of such a result, defendants cite four decisions regarding "mandatory contract clauses," all of which deal with direct government contractors and none of which bear any relation to the circumstances presented in this case. (*See* defendants' SJ Brief at 20)  Obviously, none of the cases cited by defendants approve "incorporating" an EOC into a non-government contract where the party against whom the clause is being "incorporated" had no

---

[6] In addition to being manifestly unfair, obligating the hospitals to comply with a contract clause previously unknown to them, to which they never assented (and which they obviously were given no opportunity to consider) runs afoul of all prior decisions addressing the "incorporation" doctrine. (*See* the hospitals' initial Memorandum at 31-41)  Such a result also contradicts both the express terms of the prime government contract at issue in this matter and OFCCP's own Policy Directive.

knowledge of the clause, no knowledge of its intended use , and no knowledge of the consequences flowing therefrom – and who, admittedly, never agreed to transact business with the federal government.  Moreover, defendants fail to address the obvious problems inherent in applying the "incorporation" regulation against unsuspecting entities (such as the hospitals in this case).  In that regard, defendants fail to address the fact that the incorporation regulation is being used to bind parties who, prior to OFCCP's demand to inspect their records, had no knowledge of any EOC requirements and had no reason to be operating in accordance with a contractual EOC.  Instead of addressing these central issues, defendants, after citing four inapplicable cases involving parties who contracted directly with the United States government, cite to the general nondiscrimination provisions of the Rehabilitation Act, VEVRAA and the Executive Order, arguing that these authorities authorize the Secretary of Labor to promulgate regulations regarding nondiscrimination in the area of government contracting.  (*See* defendants' SJ Brief at 21-23)  Again, defendants' argument misses the point.

     For one, defendants' citations to the general nondiscrimination provisions of the above laws fails to address the use of the "incorporation" regulation under the actual facts presented in this matter – including the obvious facts that the hospitals were never parties to a government contract, never agreed to transact business with the U.S. government, and had no knowledge of the EOC obligations defendants currently seek to enforce against them.  Defendants also fail to address the fact that, to date, there is no authority (administrative or otherwise) authorizing the use of the incorporation regulation against a ***non***-prime contractor with no knowledge of any potential government subcontractor status.  Given the breadth of the Board's holding in this matter, and given the sweeping impact the Board's decision will have on the health care industry, defendants' citation to the general nondiscrimination provisions of the Executive Order, Section 503 of the

Rehabilitation Act and VEVRAA (and their related regulations), without due consideration to the actual circumstances presented, does not justify the ARB's decision in this matter. [7]

In terms of defendants' analysis of the record evidence, defendants, again, ignore certain facts that are central to the present appeal.  For example, when considering the lone government contract at issue in this matter, defendants disregard the actual circumstances under which the OPM/Health Plan Contract was executed, as well as the obligations actually assumed by the Health Plan.  Defendants cite a provision in the OPM/Health Plan Contract setting forth the medical services available to individuals insured through the Health Plan, but in so doing, fail to acknowledge the identity of the parties *actually providing* the medical services listed.  Specifically, at page 30 of their Brief, defendants cite the following sentence from the OPM/Health Plan Contract: "The Carrier shall provide the benefits as described in the agreed upon brochure text found in Appendix A" (citing section 2.2 of the OPM/Health Plan Contract, AR 789).  Defendants cite this sentence to support their contention that the Health Plan agreed to provide actual medical care to Plan participants, not just health insurance to facilitate the provision of medical care.  In the very next paragraph of their Brief, however, defendants identify the various benefits (as set forth in the brochure) available to enrollees, all of which are provided by entities *other than the Health Plan*.  As set forth on page 31 of defendants' Brief, the listed brochure benefits include the following:

> "Medical services and supplies *provided by physicians and other health care professionals*"
>
> "Surgical and anesthesia services *provided by physicians and other health care professionals*"
>
> "Services *provided by a hospital or other facility, and ambulance services*".[8] . . .

---

[7] As noted above, defendants cite no decision where the incorporation regulation was used to bind an alleged subcontractor under circumstances similar to those presented in this case.  (*See* defendants' SJ Brief at 20-21)

8

(defendants' SJ Brief at 31) (emphasis added)  Despite the fact that the Health Plan is not the provider of the listed services, defendants continue to argue that the Health Plan, which is an insurance company that employs no doctors or other providers of medical care (*see* AR 101-02), nevertheless agreed to be a medical care provider in its contract with OPM.

The hospitals reiterate that defendants' argument regarding the Health Plan's contractual obligation to provide the medical services available to insured individuals is the same ***losing*** argument OFCCP advanced in the *Bridgeport* case.  OFCCP (in *Bridgeport*) argued that Blue Cross (under its "Federal Employees Health Benefits Program Standard Contract" with OPM) agreed to provide insured individuals with actual medical services (as opposed to insurance), in which case the hospitals that agreed to provide those services were, under the regulatory definition of the term, subcontractors.  *See OFCCP v. Bridgeport Hospital*, Case No. 00-034, 2003 WL 244810, at *2 (Jan. 31, 2003) (where the ARB summarized OFCCP's argument as follows:  "OFCCP argued the Blue [Cross]-OPM contract committed Blue [Cross] to provide or ensure that others provide its enrollees with medical care and services.")  Defendants present the same argument to this Court (based, in this case, on the "benefits" provision contained in the OPM/Health Plan Contract) (*See* defendants' SJ Brief at 30, citing section 2.2 of the OPM/Health Plan Contract, which is the

---

[8]  The above provisions directly contradict defendants' argument that the **Health Plan** agreed to be the actual provider of medical care to Plan enrollees.  As the above provisions make clear, the Health Plan never agreed to provide the medical services or supplies listed in the Employee Benefits Brochure.  To the contrary, third-party "providers" are responsible for providing all medical care.  In fact, the Health Plan Contract defines the term "benefits" as follows:  "Covered services or ***payment for covered services set forth in Appendix A***."  (*See* OPM/Health Plan Contract, AR 776) (emphasis added)  Given the fact that all medical care is being provided by third-party providers, it is obvious that the "benefits" provided by the Health Plan are limited to payment for covered services – not the services themselves.  Equally as obvious, the Health Plan is not a "physician" or "other health care professional," nor does the Health Plan employ any physicians or health care professionals (or anybody else capable of providing medical care).  (*See* Vukmer Decl., AR 101-02).  As such, it is not possible for the Health Plan to actually provide medical services to the individuals it insures.  (*Id.*)  Quite simply, the Health Plan is an insurance provider – not a provider of medical treatment.

9

contract provision relied on by defendants to support their claim that the hospitals qualify as government subcontractors)  For the same reasons articulated by the ARB in *Bridgeport*, however, the hospitals in this case are not government subcontractors.

Indeed, the operative language in the OPM/Health Plan Contract regarding the "benefits" to be provided by the Health Plan is virtually ***identical*** to the operative language contained in the OPM/Blue Cross Contract at issue in *Bridgeport*.  As noted above, the relevant provision of the OPM/Health Plan Contract cited by defendants in their initial Brief is Section 2.2 of the Contract, which reads:  "The Carrier shall provide the benefits as described in the agreed upon brochure text found in Appendix A."  (*See* defendants' SJ Brief at 30).  According to defendants, because the "Carrier" (in this case UPMC Health Plan) agreed to provide the "benefits" listed in the brochure, any contracts between the Health Plan and individual hospitals (to provide those benefits) must be government subcontracts.  (*See* defendants' SJ Brief at 30-32)[9]

Defendants, in an effort to distinguish the *Bridgeport* case, argue that the contractual obligations assumed by the insurer in *Bridgeport* (Blue Cross) are entirely different than the contractual obligations assumed by the Health Plan in this case.  According to the argument defendants are making to this Court, the Health Plan (in its contract with OPM) agreed to provide actual medical care to Plan enrollees, whereas Blue Cross (in its contract with OPM) agreed to provide only insurance.  (*See* defendants' SJ Brief at 33, where defendants state that "the contract between OPM and Blue Cross did not obligate Blue Cross to provide medical services and supplies to government employees . . .  Rather, the contract obligated Blue Cross to provide health insurance").[10]  To put defendants' current argument in perspective, and to demonstrate the

---

[9] Again, this is the identical argument advanced by OFCCP (against Blue Cross) in the *Bridgeport* case.

[10] In other words, according to defendants, the OPM/Blue Cross Contract contains a "benefits" provision which obligates Blue Cross to provide only insurance, whereas the OPM/Health Plan

unreasonableness of that argument, the hospitals note that defendants' contention (on page 33 of their SJ Brief) that Blue Cross was nothing more than an *insurer* under its contract with OPM (although accurate) is the ***exact opposite*** of the position advanced by OFCCP in the *Bridgeport* case. *See OFCCP v. Bridgeport Hospital*, Case No. 00-034, 2003 WL 244810, at *2 (Jan. 31, 2003) (where OFCCP takes the position that Blue Cross agreed to provide ***actual medical care*** to government employees).

Putting aside defendants' inconsistent positions regarding the terms of the OPM/Blue Cross Contract, when one examines the operative language in Section 2.2 of the OPM/Blue Cross Contract (*i.e.*, the government contract at issue in *Bridgeport*), it is evident that defendants cannot reasonably differentiate the contractual obligations assumed by the Health Plan (in this case) and the contractual obligations assumed by Blue Cross (in *Bridgeport*). Section 2.2 of the OPM/Blue Cross Contract reads: "The Carrier [Blue Cross] shall provide the benefits as described in the Certified Brochure Text found in Appendix A." (*See* Exhibit A to the hospitals' Motion to Supplement the Administrative Record, containing a copy of the OPM/Blue Cross Contract) Obviously, this language mirrors section 2.2 of the OPM/Health Plan Contract – which defendants cite at page 30 of their Brief.

There can be no dispute, therefore, that the Health Plan agreed to provide the same "benefits" that Blue Cross agreed to provide in the *Bridgeport* case. Simply stated, both are insurance companies, and both signed "Federal Employees Health Benefits Program" (or "FEHBP") standard contracts with OPM containing virtually identical "benefits" provisions. In both cases, the FEHBP standard contract included an Attachment A that listed the medical

---

Contract contains an entirely different "benefits" provisions – one which obligates the Health Plan to provide actual medical care to insured individuals. (*See* defendants' SJ Brief at 33) As explained below, however, defendants are incorrect. The two contracts contain virtually ***identical*** "benefits" provisions.

11

"benefits" available to insured individuals. Neither insurer, however, agreed to actually provide the medical services listed in the benefits brochure. Rather, in all cases, the medical services were to be provided by third party "providers."

Given the fact that the "benefits" provision in the OPM/Health Plan Contract is the same as the "benefits" provision in the OPM/Blue Cross Contract, defendants' contention that the "benefits" the Health Plan agreed to provide differ fundamentally from the "benefits" Blue Cross agreed to provide is neither reasonable nor consistent with a plain reading of the two FEHBP agreements.[11]

### 3. Defendants' Suggestion That the Health Plan is To Blame For the Absence of an EOC in the Hospitals' Payment Agreements Is Unsupportable

The defendants, after assuming that the hospitals qualify as government subcontractors, rely on the "incorporation" regulation to subject the hospitals to the terms of an EOC. Defendant must rely on the incorporation regulation because no contract to which the hospitals are a party contains an EOC. In support of their theory, defendants argue that the Health Plan was "required" to include an EOC in its Payment Agreements with the hospitals – but failed to do so. (*See* defendants' SJ Brief at 11) Defendants, therefore, blame the Health Plan for the absence of an EOC in the hospitals' Payment Agreements, suggesting that the Health Plan refused to comply with the terms of its government contract with OPM. (*Id*.) Defendants' contention that the OPM/Health Plan Contract obligated the Health Plan to include an equal opportunity clause in its Payment

---

[11] The hospitals' reiterate that defendants' current argument (that Blue Cross, in its government contract with OPM, *agreed to provide only insurance*) is directly contrary to the argument OFCCP advanced during the *Bridgeport* litigation (where OFCCP argued that Blue Cross, in the same government contract, agreed to provide *actual medical care*). This underscores the lack of merit inherent in defendants' position. *See OFCCP v. Bridgeport Hospital*, Case No. 00-034, 2003 WL 244810, at *2 (Jan. 31, 2003) (setting forth OFCCP's losing argument regarding Blue Cross' contractual obligations). It is apparent, therefore, that defendants are currently attempting to re-litigate the issue previously decided in *Bridgeport*, only this time with a new target. In this case, defendants argue that the Health Plan (an insurance carrier for an HMO) agreed to provide actual medical care to insured individuals. In *Bridgeport*, OFCCP argued that Blue Cross (a stand-alone insurer) agreed to provide actual medical care to insured individuals. Neither position is supportable.

Agreements with the hospitals (by virtue of the hospitals qualifying as government "subcontractors") is, under the facts presented, groundless.  By advancing this argument, defendants are contending that the Health Plan was required to treat its Payment Agreements with the hospitals (who are "***providers of medical care***") as government subcontracts.  Considering the fact that the one and only government contract at issue in this case expressly defines the term "subcontractor" to exclude "providers of medical care," such a contention could not be further from the truth.  (*See* AR 776, where the term subcontractor is defined as follows:  Any supplier, distributor, vendor or firm that furnishes supplies or services to or for a prime contractor, or another subcontractor, ***except for providers of direct medical services or supplies pursuant to the Carrier's health benefits plan***.)  Given the terms of the prime government contract at issue, the Health Plan had absolutely no reason to treat the hospitals as subcontractors – nor did it have any reason to include an EOC in its Payment Agreements with the hospitals.

Indeed, by advancing this argument, defendants are ignoring (and asking this Court to ignore) three central and undisputed facts of record.  First and foremost, defendants are asking this Court to ignore the very terms of the one and only government contract under which the hospitals are allegedly "subcontractors."  Second, defendants are asking this Court to ignore the fact that OFCCP's own Policy Directive (No. 262) specifically states that providers of medical care are not government subcontractors subject to OFCCP jurisdiction (*see* Section 4, below).  Third, defendants are asking this Court to ignore the fact that, at the time the Payment Agreements were initially negotiated and executed, ***there was no OPM/Health Plan Contract in existence***.  Given the undisputed facts of record, including the fact that no government contract existed at the time the Payment Agreements were initially prepared, it is obvious that the Health Plan had no basis to include an EOC in its Payment Agreements with the hospitals.  Contrary to defendants' contention,

therefore, the Health Plan, by failing to include an EOC in the hospitals' Payment Agreements, was in no way shirking a contractual obligation contained in the OPM/Health Plan Contract.

In a related argument, defendants suggest that the Health Plan was attempting to "invalidate" the equal opportunity provisions of the Executive Order, the Rehabilitation Act and VEVRAA by virtue of the Health Plan having signed the government contract provided by OPM, which contract contained the aforementioned definition of "subcontractor." (*See* defendants' SJ Brief at 12) Again, this could not be further from the truth. For one thing, it was OPM who included the applicable definition of subcontractor in the OPM/Health Plan Contract. Moreover, defendants' argument in this regard is premised on the faulty assumption that the hospitals qualify as government subcontractors in the first place. More particularly, defendants are assuming that the Health Plan recognized that an EOC is to be included in its contracts with health care providers, deemed the hospitals to be government subcontractors subject to such a contractual provision and, armed with this knowledge, sought (by contracting with OPM and agreeing to OPM's definition of subcontractor) to evade the contractual obligations applicable to the hospitals – thereby, according to defendants, "invalidating" an EOC. As the facts presented make clear, however, this argument is baseless. The Health Plan had no reason to consider "providers of direct medical care" to be government subcontractors.[12] It is apparent, therefore, that by virtue of the Health Plan's contract with OPM, neither the hospitals nor the Health Plan were attempting to "invalidate" an EOC – nor were they attempting to invalidate any of the equal opportunity provisions contemplated by the Executive Order, the Rehabilitation or VEVRAA.

Defendants advance a similar theory in a subsequent section of their Brief. Specifically, at pages 19-20, defendants make the following argument:

---

[12] *See* AR 776. *See also* OFCCP Policy Directive (No. 262).

> The [hospitals] contend that because their contract with UPMC Health Plan did not contain clauses requiring compliance with the non-discrimination requirements in Section 503, VEVRAA, and the Executive Order, they are not required to comply with either of the statutes, the Executive Order, or the Secretary's implementing regulations. *See* Compl. ¶¶ 67-68. As we explain below, however, each of these provisions, along with the implementing regulations, are incorporated into [the hospitals'] contracts by operation of law, and remain binding regardless of whether [the hospitals'] **consent to them**.

(*See* defendants' SJ Brief at 19-20) (emphasis added). By arguing that the government need not obtain the hospitals' "consent" in order to incorporate an EOC into the hospitals' Payment Agreements, defendants are again suggesting that the hospitals made a conscious decision to accept a government subcontract, but to reject the corresponding EOC. Defendants, according to the undisputed evidence of record, are simply wrong.

The hospitals point out, however, that the scenario where a party accepts a government contract, but nevertheless refuses to consent to an EOC, is the precise scenario addressed by the Fifth Circuit Court of Appeals in the case of *U.S. v. New Orleans Public Service, Inc.*, 553 F.2d 459 (5th Cir. 1977), which is the case cited by the ARB to support "incorporating" an EOC into the hospitals' Payment Agreements. (*See* hospitals initial Memorandum at 36, fn 27; *see also* AR at 1226, where the ARB cites the *New Orleans Public Serv.* case as the authority authorizing the use of the incorporation regulation to bind the hospitals in this case to an EOC) As the hospitals explained in their initial Memorandum, the rationale underlying the *New Orleans Public Serv.* decision is inapposite to the present case. Unlike the situation presented to the Fifth Circuit Court of Appeals, this Court is not faced with a contractor who knowingly accepted a government contract, but nevertheless *refused* to agree to an EOC.[13]

---

[13] Consequently, and as explained at length in the hospitals' initial Memorandum, the Fifth Circuit Court of Appeals' decision in the *New Orleans Public Serv.* case does not support the ARB's holding in this matter. (*See* hospitals' initial Memorandum at 31-41, explaining that the incorporation regulation (as interpreted and applied by the Fifth Circuit Court of Appeals – *in the context of a prime government contractor who refused to consent to an EOC* – cannot be used to

4.     **OFCCP's Policy Directive, By Its Very Terms, Is Directly Applicable To The Current Dispute**

In the last section of their Brief, defendants argue that OFCCP's Policy Directive (No. 262) does not apply to the issues raised in this case.  According to defendants, because the Directive was issued in response to the ARB's decision in the *Bridgeport* case, it must be disregarded under the present circumstances.  Given the text of the Directive, defendants' position is entirely unfounded.  Indeed, defendants' contention that the Policy Directive does not apply to the OPM/Health Plan Contract is directly contrary to the express terms of the Directive itself.  The Policy Directive defines its purpose as follows:  "To confirm that health care providers having a relationship with ***FEHBP participants*** are not covered under OFCCP's programs based solely on that relationship" (emphasis added).  There is nothing ambiguous about scope of the Policy Directive.  The Policy Directive expressly covers *all* Federal Employees Health Benefits Program ("FEHBP") participants.  Defendants do not (nor can they) contest the fact that the Health Plan is an FEHBP participant.  Indeed, the Health Plan/OPM Contract is entitled "**Federal Employees Health Benefits Program – Standard Contract**." (*See* Joint Exhibit 6, AR 771)  The signature page included with the Health Plan/OPM Contract is entitled:  "CONTRACT FOR FEDERAL EMPLOYEES HEALTH BENEFITS."  (AR 770). The very first definition contained in the OPM/Health Plan Contract defines the term "FEHBP" and reads:  "FEHBP:  Federal Employees Health Benefits Program" (AR 776)  It is irrefutable, therefore, that the Health Plan is an FEHBP participant, as defined in the Policy Directive.  It is similarly irrefutable that the Policy Directive, which covers all contracts between medical providers (*i.e*., hospitals) and FEHBP participants (*i.e.,* the Health Plan) is directly applicable to

---

bind the hospitals in this case.)  Indeed, the hospitals, who hold no government contracts, cannot lawfully be bound to a contractual employment provision to which they never agreed, never had the opportunity to consider, and of which they had no knowledge.

the undisputed facts presented in this case. Both sides agree that OFCCP is currently attempting to assert jurisdiction over the hospitals in this case based *solely* on their relationship with the Health Plan (an FEHBP participant). Accordingly, OFCCP's position in this case, as well as the conclusion of the ARB, directly contradict OFCCP Policy Directive No. 262.

Defendants' position regarding the inapplicability of the Policy Directive underscores the fundamental lack of reason inherent in the position defendants have taken throughout this matter. The hospitals have argued, from the outset, that the Health Plan (as the insurance carrier for an HMO) is the equivalent of a traditional insurance provider and should be treated as such – *i.e.*, the Health Plan should not be treated differently than Blue Cross, the traditional insurer at issue in *Bridgeport*. Defendants have opposed this position, arguing (as they do in their initial Brief) that the Health Plan cannot be treated as a traditional insurer based on its role in the HMO program. It is abundantly clear, however, that OFCCP's own Policy Directive supports the *hospitals'* position. Indeed, the Policy Directive (which defendants admit was issued in response to the *Bridgeport* decision) is *not* limited to traditional insurers. Rather, it covers *all FEHBP providers*, including insurance carriers for an HMO. OFCCP could have easily limited the scope of its Policy Directive to stand alone insurers (such as Blue Cross), thereby excluding insurance carriers for an HMO (such as the Health Plan). OFCCP obviously chose not to do so. Defendants cannot now, years after the Directive was issued, take the position that the Directive means something other than what it actually says.

For the Court's reference, the relevant text of the Policy Directive (which was filed in its entirety with the hospitals' Complaint in this matter), is as follows:

> Based on the ARB decision [*Bridgeport*], the office of the Solicitor (NSOL) has advised that OFCCP cannot establish subcontractor coverage of hospitals,

>pharmacies or other medical care providers based on the existence of prime contracts with Blue Cross *or other FEHBP providers*.[14]
>
>* * *
>
>**POLICY**:  Based on the ARB decision, OFCCP cannot use FEHBP coverage as a basis to assert jurisdiction over a health care provider.  Coverage over such a provider may be established by other means such as a contractual relationship with the U.S. Department of Veterans' Affairs or the Department of Defense.

*See* Policy Directive 262.  The hospitals submit that the above **POLICY** speaks for itself.  Contrary to the position taken by defendants in this case, "OFCCP cannot use FEHBP coverage as a basis to assert jurisdiction over a health care provider."

## CONCLUSION

For the reasons stated in the hospitals' initial Memorandum, and for the additional reasons set forth herein, defendants' Motion for Summary Judgment should be denied.  For the same reasons, the hospitals' Motion for Summary Judgment should be granted and the ARB's decision in this matter should be set aside.


October 14, 2010                                        Respectfully submitted,

                                                                             /s/ Jeffrey W. Larroca
                                        Jeffrey W. Larroca (DC Bar # 453718)
                                        Eckert Seamans Cherin & Mellot, LLC
                                        1717 Pennsylvania Avenue N.W.
                                        Suite 1200
                                        Washington, D.C. 20006
                                        Tel: (202) 659-6646
                                        Fax: (202) 659-6699
                                        Email: jlarroca@eckertseamans.com

                                        *Counsel for Plaintiffs*

                -and-

---

[14] Obviously, the Directive is not limited to Blue Cross, nor does the Directive distinguish between traditional insurers (such as Blue Cross) and all other FEHBP Providers (such as the Health Plan).

John J. Myers (*pro hac vice*)
Ryan J. Siciliano (*pro hac vice*)
Eckert Seamans Cherin & Mellot, LLC
US Steel Tower
600 Grant Street, 44th Floor
Pittsburg, Philadelphia  15219-2788
Tel: (412) 566-6000
Fax: (412) 566-6099
Email: jmyers@eckertseamans.com
          rsiciliano@eckertseamans.com

*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2010, the foregoing **Plaintiffs' Response Brief** was filed electronically with the Court and thereby served via ECF e-mail notification on the following counsel of record:

Lily Sara Farel, Esq.
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Suite 6107
Washington, DC 20001
202.353.7633
lily.farel@usdoj.gov

*Counsel for Defendants*

    /s/ Jeffrey W. Larroca
Jeffrey W. Larroca